IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES GYPSUM COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 17-130-VAC-MPT |
| | ) |
| NEW NGC, INC., | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

**I.    INTRODUCTION**

This matter arises from United States Gypsum Company's ("USGC") complaint against New NGC, Inc. ("NGC") for patent infringement. The patented technology relates to gypsum-containing products, such as gypsum wallboard, having an increased resistance to deformation, and to compositions and methods for producing such products.[1]

On October 25, 2016, USGC provided written notice to NGC that it is infringing the patents-in-suit and requested a meeting in an attempt to resolve the matter and avoid litigation.[2] Two such meetings occurred which were non-binding dispute resolution efforts; however, the parties were unable to reach an agreement.[3]

On February 6, 2017, USGC filed a complaint alleging that NGC manufactures products that infringe United States Patent Nos. 6,342,284 ("the '284 patent"); 6,632,550 ("the '550 patent"); 7,425,236 ("the '236 patent"); 7,758,980 ("the '980 patent"); 7,964,034 ("the '034 patent"); 8,142,914 ("the '914 patent"); and 8,500,904

---

[1] D.I. 1 at ¶ 1.
[2] *Id.* at ¶ 2.
[3] *Id.*

("the '904 patent") (collectively the "patents-in-suit").[4]

Currently before the court is NGC's motion to dismiss Claims II (the '550 patent), V (the '034 patent), VI (the '914 patent), and VII (the '904 patent) pursuant to FED. R. CIV. P. 12(b)(6).[5]

## II. BACKGROUND

USGC is a Delaware corporation.[6] USGC is a leading manufacturer and distributer of building materials, including gypsum products used to construct walls, ceilings, roofs, and floors in various types of buildings.[7] USGC claims to be the nation's leading producer of gypsum wallboard used in the building construction industry under its Sheetrock brand.[8]

NGC is also a Delaware corporation and is a direct competitor of USGC in the production, marketing, and sale of gypsum wallboard products.[9]

This action arises primarily from NGC's alleged infringement of a breakthrough patent technology in the formulation of gypsum wallboard. The key ingredient–the "enhancing material"–refers to a class of phosphorus-containing compounds that provide surprising improvements in sag resistance, strength, and dimensional stability of gypsum wallboards.[10] USGC uses a patented method containing sodium trimetaphosphate ("STMP") as its enhancing material.[11] The use of STMP in USGC's

---

[4] *Id.*
[5] D.I. 9.
[6] D.I. 1 at ¶ 4.
[7] *Id.*
[8] D.I. 12 at 3.
[9] D.I. 1 at ¶ 5.
[10] D.I. 12 at 4.
[11] *Id.*

wallboards significantly improves the quality of its products, virtually eliminates a long time problem of sagging boards under moisture and humidity exposure, and reduces the weight of USGC's Sheetrock brand wallboard.[12]  "In addition to improving product performance, the patented technology also reduces manufacturing, transportation, and handling costs."[13]

### III. GOVERNING LAW

In analyzing a motion to dismiss under FED. R. CIV. P. 12(b)(6), a review of Rule 8(a)(2) is necessary.  It requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  That standard "does not require 'detailed factual allegations,' but . . . demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."[14]  Thus, to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"[15]  The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[16]  Evaluating a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all material allegations of the complaint.[17]  "The issue is not whether a plaintiff will ultimately prevail, but

---

[12] *Id.*
[13] D.I. 1 at ¶ 24.
[14] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).
[15] *Id.* (quoting *Twombly*, 550 U.S. at 570); *see* FED. R. CIV. P. 12(b)(6).
[16] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).
[17] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

3

whether the claimant is entitled to offer evidence to support the claims."[18] A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[19]

To survive a motion to dismiss under Rule 12(b)(6), the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[20] A plaintiff is obliged "to provide the 'grounds' of his entitle[ment] to relief" beyond "labels and conclusions."[21] Heightened fact pleading is not required: rather "enough facts to state a claim to relief that is plausible on its face" must be alleged.[22] Rejected are unsupported allegations, "bald assertions," or "legal conclusions."[23] Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[24] The analysis is a "context-specific task that requires the reviewing court

---

[18] *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citations omitted).
[19] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).
[20] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).
[21] *Twombly*, 550 U.S. at 555.
[22] *Id.* at 570.
[23] *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.") (citations omitted); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self-evidently false" are not accepted).
[24] *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 (A court is "not bound to accept as true a legal conclusion couched as a factual allegation.").

to draw on its judicial experience and common sense."[25] Well-pled facts which only infer the "mere possibility of misconduct" do not show that "the pleader is entitled to relief" under Rule 8(a)(2).[26] "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."[27]

To prove direct infringement, "the patent owner must establish that one or more claims of the patent (as construed by the court) read on the accused method either literally or under the doctrine of equivalents."[28] "A plaintiff may have a plausible claim for direct infringement 'sufficient to withstand *Iqbal/Twombly* scrutiny' by 'specifically identifying . . . products' which 'perform the same unique function as [the] patented system.'"[29]

> In the context of patent litigation, it is logical to presume that a defendant has greater access to and, therefore, more information about its accused method. The degree of public information about any accused method varies widely, as does the degree of specificity with which any asserted invention is claimed. Given the focus of the above articulated standard of review on reasonable notice of plausible claims under the circumstances, the question a court must address with each case is whether the plaintiff at bar has provided sufficient information to allow the court to determine plausibility and to allow the named defendant to respond to the complaint.[30]

---

[25] *Iqbal*, 556 U.S. at 679.
[26] *Id.*
[27] *Id.*
[28] *DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 469 (D. Del. 2016) (citing *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001)).
[29] *Id.* (citing *Robern, Inc. v. Glasscrafters, Inc.*, 206 F. Supp. 3d 1005, 1009 (D.N.J. 2016)).
[30] *Id.*

## IV. DISCUSSION

NGC first argues USGC fails to allege the existence of a particular amount of accelerator that achieves a higher strength board in the accused products and, therefore, the complaint does not contain sufficient factual matter under the *Iqbal* and *Twombly* pleading standard.[31] Specifically, NGC states "[t]here are no allegations regarding the specific accelerator and no allegations that an accelerator is ever included in any particular amount."[32] NGC avers USGC fails to "even suggest that there is a relationship between the alleged infringing accelerator and strength."[33]

USGC asserts that "[d]irect evaluation and testing of [NGC's] . . . gypsum boards confirms that they . . . contain sodium trimetaphosphate ("STMP"), or a similar condensed phosphate enhancement compound to enhance resistance to sag, strength, and other commercially important properties. . . ."[34] USGC continues, "[d]ue to the use of STMP or other similar phosphate additive, [NGC's gypsum boards] are characterized by significantly improved sag resistance. . . ."[35]

Under the applicable standard, heightened pleading is not required and USGC's complaint is sufficient to state a plausible claim for relief. Indeed, NGC admits pleading a precise amount of accelerator is not warranted at this stage of the proceedings.[36]

NGC maintains USGC fails to address how its 5/8 inch gypsum boards infringe

---

[31] D.I. 10 at 3-4.
[32] *Id.* at 4.
[33] D.I. 13 at 5.
[34] D.I. 1 at ¶ 29.
[35] *Id.* at ¶ 30.
[36] D.I. 13 at 4.

the patents which, it argues, limits a board to be cast in a 1/2 inch form.[37] It quotes language from claim one of the '904 patent (which both parties agree is emblematic of the issue) in support of its argument that the asserted patents are limited to only 1/2 inch boards.[38]

As USGC demonstrates, NGC misconstrues the language. "The reference to casting the mixture as a 1/2 inch gypsum board is not a thickness limitation for a board made by the claimed methods, but rather refers to an objective test procedure for determining whether the mixture contains a sufficient amount of enhancing material."[39] Indeed, the 1/2 inch measurement in the claimed patents references the industry standard for testing sag resistance and strength of gypsum wallboards. It is not a limitation on the thickness of USGC's wallboard products as NGC claims. Thus, USGC has adequately pled NGC's 5/8 inch wallboards infringe its patents by specifically identifying products which perform the same unique function as the patented system.

NGC also insinuates USGC fails to present any theory of infringement in its complaint, whether it be direct infringement or under the doctrine of equivalents.[40] Yet, USGC's complaint makes it clear it is pursuing a theory of direct infringement. The complaint explicitly alleges direct infringement of claims II, V, VI, and VII.[41] Thus, USGC

---

[37] D.I. 10 at 3.
[38] *Id.*; D.I. 1 at Ex. G ("[S]uch that when the mixture is cast in the form of 1/2 inch gypsum board, said board has a sag resistance, as determined according to ASTM C473-95, of less than about 0.1 inch per two foot length of said board, the accelerator having been included in an amount such that the set gypsum-containing product has greater strength than it would have if the accelerator had not been included in the mixture.").
[39] D.I. 12 at 12.
[40] D.I. 10 at 8.
[41] *See* D.I. 1 at ¶¶ 46-48, 81-84, 92-96, 104-108; *see also* D.I. 12 at 8.

has met the applicable pleading standard by providing sufficient information to allow this court to determine plausibility and to allow NGC to respond to the complaint.[42]

**V. CONCLUSION**

For the reasons contained herein, it is recommended that:

(1) NGC's motion to dismiss claims II, V, VI, and VII (D.I. 9) pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief can be granted be DENIED.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served a copy of this Report and Recommendation. Objections and responses are limited to ten (10) pages each.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

Dated: June 12, 2017  /s/ Mary Pat Thynge
UNITED STATES MAGISTRATE JUDGE

---

[42] *See DermaFocus LLC v. Ulthera, Inc.*, 201 F. Supp. 3d 465, 469 (D. Del. 2016).