## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

UNITED STATES GYPSUM COMPANY, )
                                )
        Plaintiff,              )
                                )
        v.                      )    Civil Action No. 17-130-JFB-SRF
                                )
NEW NGC, INC.,                  )    UNDER SEAL
                                )         unsealed
        Defendant.              )

## MEMORANDUM OPINION

### I.    INTRODUCTION

Presently before the court in this patent infringement action is the motion for a protective

order filed by Defendant New NGC, Inc. ("NGC"). (D.I. 107) For the following reasons,

NGC's motion is GRANTED.

### II.    BACKGROUND

Plaintiff United States Gypsum Company ("USG") initiated this patent infringement suit

on February 6, 2017, alleging infringement of United States Patent Nos. 6,342,284; 6,632,550;

7,425,236; 7,758,980; 7,964,034; 8,142,914; and 8,500,904 (collectively "the patents-in-suit").

(D.I. 1) USG develops and manufactures gypsum products used to construct walls, ceilings,

roofs and floors of various types of buildings. (*Id.* at ¶ 4) NGC is a direct competitor of USG in

manufacturing, marketing and selling gypsum products. (*Id.* at ¶ 5) The patents-in-suit are a

group of related patents with overlapping specifications[1] and common inventors, which are

directed to wallboard products with increased resistance to sag, less density, and other improved

---

[1] Although the specifications of the patents-in-suit are substantially similar, they do not share a
common specification. (D.I. 74 at 3 n.5)

Stored Information. (D.I. 107, Ex. B) NGC and USG met-and-conferred and were able to

resolve concerns regarding a number of the proposed search strings. (D.I. 107 at 2) However,

the following USG email search string remains at issue:[3]

> (Yakowenko OR Bushman OR Mascioli OR Griffith OR Adams OR Herold OR
> Guinsler OR Martinez OR Holder OR Emert OR Erhardt) AND (LWWB OR
> LWB OR HSL OR lite OR light OR "high strength" OR ultralight OR Sheetrock
> OR USG* OR "US Gypsum" OR "U.S. Gypsum" OR "United States Gypsum"
> OR deflect* OR sag* OR STMP* OR MCM OR phosp* OR "sodium trimeta*"
> OR "humid* def*" OR "HD")[4]

(*Id.*)

The employees at issue were not identified in either NGC's or USG's Initial Disclosures

as having relevant knowledge. (D.I. 107 at 2) Similarly, none of these individuals were

identified in either NGC's or USG's disclosures pursuant to Paragraph 3 of the Default Standard

as having relevant knowledge. (*Id.*) The parties describe the employment histories of the

relevant employees, which information was obtained from their respective LinkedIn profiles, as

follows:

- Kevin Bushman: joined NGC in 2016; previously worked at USG for twenty years,
  where he served in positions such as engineering and production manager roles, as well
  as a Regional Sales Manager in USG's distribution subsidiary.

---

[3] USG states that, in order to address NGC's breadth concerns, it narrowed its proposed search to remove three employees and the names of NGC's accused products, as shown below:

> (Yakowenko OR Bushman OR Mascioli OR Griffith OR Adams OR Herold OR Guinsler
> OR Martinez OR Holder OR Emert OR Erhardt) AND (LWWB OR LWB OR HSL OR
> lite OR light OR "high strength" OR ultralight OR Sheetrock OR USG* OR "US
> Gypsum" OR "U.S. Gypsum" OR "United States Gypsum" OR deflect* OR sag* OR
> STMP* OR MCM OR phosp* OR "sodium trimeta*" OR "humid* def*" OR "HD")

(D.I. 108 at 2) However, NGC maintains its objection to the search despite these proposed modifications.

[4] The term "Sheetrock" is USG's trademarked name for its wallboard, and "UltraLight" is a name used by USG in marketing its light weight wallboard products. (D.I. 107 at 2 n.2)

- Michael Emert: is no longer employed at NGC, and while at USG worked at their New Orleans' plant.

- Thomas Griffith: joined NGC in 2014; was a project engineer and engineering manager at USG's Norfolk plant.

- Kelly Guinsler: joined NGC in 2014; was involved in product demonstrations and sales presentations while at USG.

- Lee Holder: works at NGC in a sales and marketing role; while at USG, was a sales training manager.

- Todd Mascioli: joined NGC in 2006; previously worked at USG for nine years as a plant engineer and manager.

- Steven Martinez: works at NGC in a marketing and sales role; while at USG, he also worked as a marketing sales representative.

- John Yakowenko: joined NGC in 2006; previously worked at USG for seventeen years, including as a plant manager at USG's Boston plant.

(D.I. 107 at 3-4; D.I. 108 at 3)

### III.    LEGAL STANDARD

Pursuant to Rule 26,

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  Rule 26(c) provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense...." Fed. R. Civ. P. 26(c) (*see also Ethypharm S.A. France v. Abbott*, 748 F. Supp. 2d 354, 359 (D. Del. 2010) (citations omitted).  The burden of persuasion is on the party seeking the protective order. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "To

4

overcome the presumption, the party seeking the protective order must show good cause by
demonstrating a particular need for protection." *Id.* Four factors guide the evaluation of good
cause: "relevance, need, confidentiality and harm." *Mannington Mills, Inc. v. Armstrong World
Industries, Inc.*, 206 F.R.D. 525, 529 (D. Del. 2002) (citing to *Micro Motion, Inc. v. Kane Steel
Co., Inc.*, 894 F.2d 1318, 1323 (Fed. Cir. 1990)). "[E]ven if the information sought is relevant,
discovery is not allowed where no need is shown, or where compliance is unduly burdensome, or
where the potential harm caused by production outweighs the benefit." *Id.*

## IV.    DISCUSSION

USG contends that the requested discovery is within the scope of discoverable evidence
because it is relevant to copying in relation to USG's willful infringement claim.[5] (D.I. 108 at 2-
3) USG relies on case authority that suggests a former employee's activities can be the "most
persuasive" circumstantial evidence of willful infringement. *See Liquid Dynamics Corp. v.
Vaughan Co.*, 449 F.3d 1209, 1225-26 (Fed. Cir. 2006) (finding that evidence of the plaintiff's
employee being subsequently hired by the defendant was persuasive circumstantial evidence of
willful infringement where the employee had intimate knowledge of the claimed technology and
design embodying the claims at issue). According to USG, its former employees, who were later
hired by NGC, "would have had the opportunity to change or influence the formulation or
manufacturing of NGC's wallboards accused of infringement in this case and sell and market the
technology to customers in the same way they had done in their previous positions at USG."
(D.I. 108 at 3)

---

[5] USG further argues that the discovery it seeks is directly relevant to the non-obviousness of the
asserted claims. (D.I. 108 at 4 n.3) However, USG has not explained this assertion in its
briefing or at oral argument.

5

NGC argues that the discovery requests have little to no relevance to the claims and
defenses in issue. (D.I. 107 at 3-4) NGC contends that the patents-in-suit disclosed the use of
sodium trimetaphosphate ("STMP")[6] sixteen years ago in 2002 when they were issued and
contained formulations. (8/20/18 Tr. at 7:13-8:4) Therefore, this information was already
disclosed to the public. NGC further contends that if there was anything to copy, it did not
necessarily come from the knowledge of the employees at issue here. Unlike the case in *Liquid
Dynamics*, there has been no showing by USG that these employees had specialized knowledge
that was unknown to the public beyond the specifications of the patents themselves.

The parties do not dispute that NGC has already conducted searches of documents
relevant to the case using broad terms, several of which are propounded by USG in the email
search string currently at issue. For example, NGC searched "STMP," "sodium trimeta" and its
variations, "phosphate," "lite," "light," and "UltraLight." (8/20/2018 Tr. at 9:19-10:7)
Therefore, NGC argues that these searches would have yielded the relevant information that
USG now seeks if such documents existed. NGC informed the court that its prior searches
yielded some emails capturing the names of the individuals USG has targeted in its requests. (*Id.*
at 13:13-24) In NGC's view, such emails do not prompt the need to search for anything more.[7]
(*Id.* at 14:1-11) USG has not argued that the production of information disclosing the names of
some of its former employees necessitates the additional discovery it seeks. (*Id.* at 14:10-17)
USG did not identify any such documents to support its pending requests in the meet-and-coffer

---

[6] STMP is a condensed phosphate compound that enhances resistance to sag, strength, and other
commercially important properties of the gypsum wallboards. (D.I. 1 at ¶ 29)

[7] It is NGC's position that USG's argument that the discovery in dispute will be informative to
its claims of copying, willfulness, and non-obviousness hangs on a weak thread and is more
likely an attempt to "fish" for information on whether there are potential claims for trade secret
impropriety. (D.I. 107 at 3-4; 8/20/2018 Tr. at 5:7-6:13)

sessions between counsel. (*Id.* at 14:18-15:10)  In fact, when asked by the court to explain what

basis USG has to believe that the discovery it seeks would yield relevant information, USG

conceded that, at this point, it lacks any substantive support for its requests, other than the

individuals' job titles, job descriptions, and their respective employment histories with both

parties. (*Id.* at 23:3-24:15)

For the foregoing reasons, the court finds that USG's propounded discovery is not

relevant or necessary, and USG has not offered any argument, beyond mere speculation or

conjecture, to suggest otherwise. *See Tessera, Inc. v. Broadcom Corp.*, No. CV 16-380-LPS-

CJB, 2017 WL 4876215, at *2 (D. Del. Oct. 24, 2017) ("requested information is not relevant ...

if the inquiry is based on the party's mere suspicion or speculation") (internal citation omitted).

In addition to being irrelevant, NGC has shown that USG's propounded discovery is not needed

in this case, and that it is overbroad and burdensome.[8] (8/20/2018 Tr. at 10:8-13:10); *see*

*Mannington Mills*, 206 F.R.D. at 529.  Thus, the court finds that NGC has satisfied its burden of

demonstrating that a protective order is appropriate.

## V.    CONCLUSION

For the foregoing reasons, NGC's motion to for a protective order is GRANTED.  (D.I.

107)

Given that the court has relied upon material that technically remains under seal, the

court is releasing this Memorandum Order under seal, pending review by the parties.  In the

unlikely event that the parties believe that certain material in this Memorandum Order should be

redacted, the parties should jointly submit a proposed redacted version by no later than **August**

---

[8] NGC concedes that the fourth prong of the protective order analysis, relating to confidentiality, is neutral.  (8/20/2018 Tr. at 13:4-10)

**31**, **2018**. The court will subsequently issue a publicly available version of its Memorandum
Order.

      This Memorandum Opinion is filed pursuant to 28 U.S.C. § 636(b)(1)(A), Fed. R. Civ. P.

72(a), and D. Del. LR 72.1(a)(2). The parties may serve and file specific written objections

within fourteen (14) days after being served with a copy of this Memorandum Opinion. Fed. R.

Civ. P. 72(a). The objections and responses to the objections are limited to ten (10) pages each.

      The parties are directed to the court's Standing Order For Objections Filed Under Fed. R.

Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website,

www.ded.uscourts.gov.

Dated: August **23**, 2018

                           Sherry R. Fallon
                         United States Magistrate Judge

8